UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEVIN ROGERS,

    Petitioner,

v.

    CASE NO. 2:07-CV-10778
    JUDGE MARIANNE O BATTANI
    MAGISTRATE JUDGE PAUL J. KOMIVES

MICHAEL CURLEY,

    Respondent.[1]

_____/

# REPORT AND RECOMMENDATION

*Table of Contents*

I.    RECOMMENDATION……………………………………………..………………………………...1
II.   REPORT……………………………………………………..……………………………………...1
    A.  *Procedural History*……………………………….……..……………………………….2
    B.  *Factual Background Underlying Conviction*……………….…....……………………………4
    C.  *Standard of Review*………………………………….……………………………………...5
    D.  *Waiver of Jury Trial (Claim I)*…………………………………….....…………………………..7
    E.  *Identification (Claims II & III)*………………………………….……………………...9
    F.  *Sentencing (Claim IV)*………………………………………………………………………11
    G.  *Sufficiency of the Evidence (Claim V)*………………………….……………………...15
    H.  *Ineffective Assistance of Counsel (Claims VI & VII)*…..……………..……………….....16
    I.  *Conclusion*………………………………………………………………...………………18
III.  NOTICE TO PARTIES REGARDING OBJECTIONS………………………………………..18

\*   \*   \*   \*   \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

---

[1] By Order entered this date, Michael Curley has been substituted in place of Kenneth Romanowski as the proper respondent in this action.

A.     *Procedural History*

1.     Petitioner Devin Rogers is a state prisoner, currently confined at the Ojibway Correctional Facility in Marenisco, Michigan.

2.     On November 5, 2002, petitioner was convicted of armed robbery MICH. COMP. LAWS § 750.529, carjacking MICH. COMP. LAWS § 750. 529(a), felon in possession of a firearm MICH. COMP. LAWS § 750. 224(f), and possession of a firearm during the commission of a felony MICH. COMP. LAWS § 750.227(b), following a bench trial in the Wayne County Circuit Court. On November 21, 2002, he was sentenced to concurrent terms of 8-to-15 years' imprisonment for his armed robbery conviction, 8-to-15 years' imprisonment for his carjacking conviction, and 40 months' to 5 years' imprisonment for his felon in possession conviction, and to a mandatory consecutive term of two years' imprisonment for his felony-firearm conviction.

3.     Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

> I.   DEFENDANT'S WAIVER OF HIS CONSTITUTIONAL RIGHT TO TRIAL BY JURY WAS INVALID, BECAUSE THE TRIAL COURT FAILED TO PROPERLY ESTABLISH THAT THE WAIVER WAS VOLUNTARILY, KNOWINGLY, AND INTELLIGENTLY MADE, AND FREE OF IMPROPER THREATS, COERCION, OR SUGGESTIONS OF LENIENCY.
>
> II.  DEFENDANT WAS SUBJECTED TO AN ON-THE-SCENE IDENTIFICATION PROCEDURE THAT WAS SO UNDULY AND UNNECESSARILY SUGGESTIVE, AND CONDUCIVE TO IRREPARABLY MISTAKEN IDENTITY, THAT IT AMOUNTED TO A DENIAL OF HIS STATE AND FEDERAL RIGHT TO DUE PROCESS.
>
> III. TRIAL COUNSEL'S FAILURE TO OBJECT TO, OR MOVE TO SUPPRESS, HIGHLY PREJUDICIAL IDENTIFICATION EVIDENCE BASED ON IMPROPER ON-THE-SCENE IDENTIFICATION PROCEDURES, DENIED DEFENDANT HIS FEDERAL AND STATE

           CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL.

   IV.    DEFENDANT IS ENTITLED TO APPELLATE REVIEW OF HIS SENTENCES FOR ARMED ROBBERY AND CARJACKING, WHERE THE 96 TO 180 MONTH TERMS OF IMPRISONMENT IMPOSED IN THE CASE AT BAR ARE DISPROPORTIONATE TO THE OFFENSES AND THIS OFFENDER AND AN ABUSE OF SENTENCING DISCRETION DESPITE BEING IN ACCORD WITH THE STATUTORY SENTENCING GUIDELINES.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.  *See People v. Rogers*, No. 246880, 2004 WL 1175780 (Mich. Ct. App. 2004) (per curiam).

   4.    Petitioner, proceeding *pro se*, sought leave to appeal these four issues to the Michigan Supreme Court as well as one additional issue.

   I.    DEFENDANT WAS DENIED HIS RIGHT TO EFFECTIVE ASISTANCE OF COUNSEL, THEREFORE HE IS ENTITLED TO A NEW TRIAL AND/OR HEARING PURSUANT TO *PEOPLE V. GINTHER*, 390 MICH. 436 (1973).

The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Rogers,* 471 Mich. 951, 690 N.W.2d 114 (2004).

   5.    In April 2005, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising the following claims:

   I.    DEFENDANT WAS DENIED HIS RIGHT TO A FAIR TRIAL WHERE THE VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

   II.    DEFENDANT WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO INVESTIGATE AND/OR CALL A WITNESS SUPPORTING THE DEFENSE'S THEORY.

   III.    APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO

>     RAISE MERITORIOUS ISSSUES ON DIRECT APPEAL, WHERE SUCH ISSUES WOULD HAVE HAD A VERY HIGH PROBABILITY OF HAVING AN APPEAL GRANTED, THEREFORE DENYING DEFENDANT HIS SIXTH AMENDMENT RIGHT TO COUNSEL ON APPEAL.

On August 31, 2005, the trial court denied petitioner's motion for relief from judgment. The Michigan Court of Appeals and Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Rogers*, 477 Mich. 972, 725 N.W.2d 41 (2006); *People v. Rogers*, No. 266540 (Mich. Ct. App. June 7, 2006).

      6.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on February 13, 2007. As grounds for the writ of habeas corpus, he raises both the claims raised on direct appeal and the claims raised on his motion for relief from judgment.

      7.     Respondent filed his answer on November 6, 2007. He contends that petitioner's claims are procedurally defaulted, non-cognizable, and without merit.

B.    *Factual Background Underlying Petitioner's Conviction*

The Michigan Court of Appeals on petitioner's direct appeal accurately summarized the facts underlying his conviction:

>     In the early morning hours of May 6, 2002, Takyesia Washington was robbed at gunpoint outside the front door of a Detroit gas station. The assailant took Ms. Washington's keys and drove off in her vehicle with her purse, $3200 in cash, and other belongings inside. Ms. Washington indicated that she had ample opportunity to view the robber's face. The area near the door was well lighted and she stood face-to-face with her assailant during the robbery. Ms. Washington described the robber to officers on the scene as approximately twenty-five years old, five feet seven inches tall, 130 pounds, with a medium complexion and wearing all black.
>
>     Ms. Washington's vehicle was protected by Onstar. Ms. Washington contacted an acquaintance employed with the company to help locate her vehicle.

> The Onstar employee indicated that the vehicle was on Dacosta street in the city of Detroit. Ms. Washington arrived in the neighborhood after dawn shortly after the robbery, and found her vehicle parked behind a vacant home. She contacted the police and a patrol unit arrived on the scene. While awaiting the arrival of officers from the carjacking unit, Detroit police officer Juaquita Johnson ticketed an illegally parked vehicle. Defendant came out of a nearby home and removed the ticket. Ms. Washington recognized defendant as the robber, so the police officers detained defendant for questioning. After having an opportunity to take a closer look at defendant, Ms. Washington again identified him as her assailant and defendant was placed under arrest. At the time of his arrest, defendant was twenty years old, five feet nine inches tall, 150 pounds and wearing all blue. Officer Johnson described defendant as dark complexioned. *People v. Rogers*, No. 246880, 2004 WL 175780 (Mich. Ct. App 2004) (per curium) at 1.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that

5

contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

6

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Waiver of Jury Trial (Claim I)*

Petitioner first claims that his waiver of a jury trial was invalid because the trial court failed to establish that the waiver was voluntarily, knowingly, and intelligently made, and free from improper threats or coercion. This claim is not cognizable or without merit on habeas review.

To the extent petitioner alleges a violation of the state constitution or state law, such claims are not cognizable upon federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). To the extent petitioner alleges a violation of federal constitutional rights, resolving this question depends on

the particular facts and circumstances of the case. *Lott v. Coyle*, 261 F.3d 594, 615 (6th Cir. 2001); *United States v. Martin*, 704 F.2d 267, 272 (6th Cir.1983). In *Martin*, the court held that a waiver of a jury trial is valid if it is in writing, if the government attorney consents to the waiver, if the trial court approves the waiver, and if the defendant's waiver is voluntary, knowing, and intelligent. *Id.* at 271. The burden rests on the petitioner to show that the waiver was invalid, or in this specific case, not voluntarily and intelligently made. *Adams v. United States*, 317 U.S. 269, 281 (1942); *Sowell v. Bradshaw*, 372 F3d 821, 832 (6th Cir. 2004). There is no constitutional requirement that a court conduct a complex colloquy with a defendant prior to a proper waiver of a jury trial. *Jackson v. Burt*, 877 F.Supp 389, 393 (E.D. Mich. 1995), *aff'd* 99 F.3d 1139 (6th Cir. 1996); *Spytma v. Howes*, 313 F.3d 363, 370 (6th Cir. 2002). A waiver may be voluntary, knowing, and intelligent if the defendant has a minimum amount of knowledge concerning his jury trial right and the mental capacity to understand the implications of the waiver of that right. *Martin*, 704 F.2d at 273; *Lott*, 261 F.3d at 615. "Technical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F.3d at 370 (quoting *Martin*, 704 F.2d at 273).

Here, the trial court informed petitioner that he had an absolute right to a jury trial in his case:

> The Court:   You understand you have an absolute right to a jury trial in this matter?
>
> [Petitioner]:   Yes, ma'am.
>
> The Court:   But you wish to waive that right and have me decide the facts of this case?
>
> [Petitioner]:   Yes, ma'am.

8

> The Court: We will then proceed by waiver.

Bench Trial Tr., Vol I at 4. Even though this colloquy is not complex, it is constitutionally sufficient to establish an intelligent waiver. While it does not sufficiently establish the voluntariness of the waiver the court on direct appeal noted that the petitioner had signed a written waiver. In it petitioner claimed he was neither coerced into signing the waiver nor that his waiver was given involuntarily without understanding his rights. Compliance with the writing requirement creates the presumption that the waiver is voluntarily, intelligently, and knowingly made. *Spytma*, 313 F.3d at 371. Therefore, petitioner's claim is without merit and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Identification (Claims II & III)*

Petitioner next claims that he was subjected to an on-the-scene identification procedure that was so unduly and unnecessarily suggestive that it amounted to a denial of due process. Along with this claim, petitioner also alleges that his trial counsel's failure to object or move to suppress this identification evidence amounted to a violation of his right to effective assistance of counsel. These claims are without merit and do not entitle petitioner to habeas relief.

To the extent petitioner avers the on-the-scene identification violated his state rights to due process that argument is not cognizable on habeas review for the same reasons stated above regarding state law. Concerning his federal rights with respect to identification testimony, the Sixth Circuit has set forth the following relevant law:

> A conviction based on identification testimony violates the defendant's constitutional right to due process whenever the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Thigpen v. Cory*, 804 F.2d 893, 895 (6th Cir. 1986) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968) (parallel citations omitted)). A defendant is denied due process "only when the identification

> evidence is so unreliable that its introduction renders a trial unfair." *Smith*, 723 F.2d at 482 (quoting *Summitt v. Bordenkircher*, 608 F.2d 247, 253 (6th Cir. 1979)). "As long as there is not a substantial likelihood of misidentification, it is the function of the jury to determine the ultimate weight to be given to the identification." *Id.*; *see also United States v. Hill*, 967 F.2d 226, 230 (6th Cir. 1992).
>
> This court has prescribed a two-step analysis for determining the admissibility of identification evidence. *Ledbetter v. Edwards*, 35 F.3d 1062, 1071-72 (6th Cir. 1994); *Hill*, 967 F.2d at 230. First, the defendant bears the burden of proving that the identification procedure was impermissibly suggestive. *Id.* Second, if the defendant meets this burden, the court evaluates the totality of the circumstances to determine whether the identification was nevertheless reliable. *Id.* The following factors guide the court's reliability analysis: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witness's level of certainty when identifying the defendant at the confrontation; and (5) the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (parallel citations omitted); *Ledbetter*, 35 F.3d at 1071 (applying the *Biggers* factors); *Hill*, 967 F.2d at 230 (same). If the defendant fails to show that the procedure was impermissibly suggestive, or if the totality of the circumstances indicates that the identification was otherwise reliable, admission of the identification testimony does not violate the defendant's right to due process.

*United States v. Meyer*, 359 F.3d 820, 825 (6th Cir. 2004).

Here, petitioner has failed to establish that the on-the-scene identification was so unduly suggestive that it amounted to a denial of his right to due process. As set forth in the facts provided by the court on direct appeal, the victim was robbed face-to-face in a well-lit area and was able to provide police with a detailed description of her assailant. Afterwards she tracked down her vehicle and alerted police to its location. In the presence of the police the victim spontaneously identified her attacker and police had petitioner detained. The man detained by police closely matched the description the victim had previously provided police. By fulfilling the four criteria set forth by *Biggers*, the identification testimony was not unduly suggestive or a violation of due process. This conclusion is strongly buttressed by the fact that the victim, prior

to viewing any line-up and independent of any police involvement saw petitioner on the street and recognized him as her attacker. This prior, independent identification renders doubtful any assertion that her subsequent identification of petitioner in the line-up was the result of a suggestive police procedure, rather than of her own independent judgment. *See Dumond v. Lockhart*, 885 F.2d 419, 422 (8th Cir. 1989); *Robinson v. State*, 875 S.W.2d 837, 840-41 (Ark. 1994); *Commonwealth v. Sylvia*, 781 N.E.2d 46, 50 (Mass. App. Ct. 2003).

Additionally, petitioner's trial counsel cannot be deemed ineffective for failing to object or moving to suppress the identification testimony. As just stated, the identification was not a violation of due process and counsel was not ineffective for failing to raise meritless challenges to the admission of this testimony. Therefore, petitioner's second and third claims are without merit and the Court should conclude that petitioner is not entitled to habeas relief on these claims.

F.      *Sentencing (Claim IV)*

Petitioner claims next that his sentences for armed robbery and carjacking were disproportionate to his offenses. Petitioner's claim is solely one of state law, which is not cognizable on federal habeas review. *See Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.). To the extent petitioner claims that his sentence violates the separation of powers and due process, the claim is without merit.

In *Solem v. Helm*, 463 U.S. 277 (1983), the Supreme Court held that the Eighth Amendment requires that "a criminal sentence be proportionate to the crime for which the defendant has been convicted." *Id.* at 290. In considering whether a sentence is proportionate, the Court identified three objective factors which are relevant: "(I) the gravity of the offense and the

harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for the same crime in other jurisdictions." *Id*. at 292. Applying this test to the facts before it, the Court found that the defendant's sentence of life imprisonment without possibility of parole under a habitual offender statute was disproportionate where the three underlying felonies were nonviolent crimes involving small sums of money, the final felony being for uttering a false check. *See id.* at 303.

However, the reach of *Solem* has been limited by the Supreme Court's more recent decisions. In *Harmelin v. Michigan*, 501 U.S. 957 (1991), the Court held that Michigan's mandatory sentence of life imprisonment for possession of over 650 grams of a controlled substance did not violate the Eighth Amendment. Justice Scalia, joined by Chief Justice Rehnquist, reasoned that *Solem* was wrongly decided and should be overruled, and concluded that the Eighth Amendment contains no proportionality requirement outside the capital punishment context. *See Harmelin*, 501 U.S. at 965 (Scalia, J.). Justice Kennedy, joined by Justices O'Connor and Souter, concluded that the Eighth Amendment contains a very narrow proportionality principle, which prohibits only those punishments, which are 'grossly' disproportionate to the crime. *See id*. at 1001 (Kennedy, J.). Further, Justice Kennedy's opinion distinguished *Solem*, essentially limiting application of the *Solem* objective criteria test to the facts in that case. *See id.* at 1001-05. Specifically, Justice Kennedy concluded that the objective analysis required in *Solem* is "appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Id*. at 1005-06.[2] Thus, it is unclear whether, and to what extent, *Solem*

---

[2] Justices White, Blackmun, Stevens, and Marshall all concluded that *Solem* should be upheld, and the three factor test applied to the sentencing scheme at issue. *See Harmelin*, 501 U.S. at 101

12

remains good law. *See McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992) ("By applying a head-count analysis, we find that seven members of the Court supported a continued Eighth Amendment guaranty against disproportional sentences. Only four justices, however, supported the continued application of all three factors in *Solem*, and five justices rejected it. Thus, this much is clear: disproportionality survives; *Solem* does not.").

As the Sixth Circuit has summarized, under *Harmelin*, "although only two Justices [Rehnquist and Scalia] would have held that the eighth amendment has no proportionality requirement, five Justices [Kennedy, O'Connor, and Souter, along with Rehnquist and Scalia] agree that there is no requirement of strict proportionality." *United States v. Hopper*, 941 F.2d 419, 422 (6th Cir. 1991). At most, then, the Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin*, 501 U.S. at 1001; *Hopper*, 941 F.2d at 422 ("the eighth amendment is offended only by an extreme disparity between crime and sentence"). Thus, as a general matter, "one could argue without fear of contradiction by any decision of the [Supreme] Court that for crimes concededly classified and classifiable as felonies, that is, as punishable by significant terms of imprisonment in a state penitentiary, the length of sentence actually imposed is purely a matter of legislative prerogative." *Rummel v. Estelle*, 445 U.S. 263, 274 (1980); *see Harmelin*, 501 U.S. at 962-65 (Scalia, J.); *id.* at 997-1001 (Kennedy, J.)

More recently, the Supreme Court again considered the proportionality issue under the Eighth Amendment, resulting in a split similar to that reached in *Harmelin*. In *Ewing v. California*, 538 U.S. 11 (2003), a three-justice plurality reaffirmed Justice Kennedy's approach

---

(White, J., dissenting).

in *Harmelin*, concluding that the Eighth Amendment contains a narrow proportionality principle which forbids sentences which are grossly disproportionate to the offense. *See id.* at 23-24 (opinion of O'Connor, J.) Justice O'Connor was joined in this position by Justice Kennedy, who had authored the plurality opinion in *Harmelin*, and by Chief Justice Rehnquist, who in *Harmelin* had joined Justice Scalia in concluding that the Eighth Amendment contains no proportionality requirement outside of the capital sentencing context. Justice Scalia, now joined by Justice Thomas (who was not on the Court when *Harmelin* was decided), reaffirmed his view that the Eighth Amendment contains no proportionality guaranty. *See id.* at 32 (opinion of Scalia, J.); *id.* at 32 (opinion of Thomas, J.). Justice Stevens likewise reaffirmed his view from *Harmelin* that the three-factor test of *Solem* guides the proportionality inquiry under the Eighth Amendment. Justice Stevens was joined in this view by Justice Souter, who had joined the plurality opinion of Justice Kennedy in *Harmelin*, as well as by Justices Ginsburg and Breyer, who were not on the Court when *Harmelin* was decided. *See id.* at 33-35 (opinion of Stevens, J.); *id.* at 36-37 (opinion of Breyer, J.). Thus, although the particular Justices attached to each position have changed somewhat, the numbers and rationales in *Ewing* break down precisely as they did in *Harmelin*. Thus, for purposes of habeas review, the Sixth Circuit's analysis of *Harmelin*, in which this Court asks only whether the sentence is grossly disproportionate to the offense, *see Coleman v. DeWitt*, 282 F.3d 908, 915 (6th Cir. 2002); *United States v. Baker*, 197 F.3d 211, 217 (6th Cir. 1999), remains controlling under *Ewing*.

Here, the *Harmelin* plurality's "threshold comparison" of petitioner's crime and the sentence imposed, does not "lead to an inference of gross disproportionality," *Harmelin*, 501 U.S. at 1005, and thus the Court should conclude that petitioner is not entitled to habeas relief on

14

this ground. The crime involved robbing a woman at gunpoint outside a gas station during the early morning hours and driving away with her vehicle and her purse, which contained her cash and other belongings. The maximum penalty for armed robbery and carjacking is life or any term of years. MICH. COMP. LAWS §750.529; MICH. COMP. LAWS §750.529a. Petitioner's 8 to 15 year sentences for armed robbery and carjacking are not extreme or grossly disproportionate to the crimes. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

G.      *Sufficiency of the Evidence (Claim V)*

Petitioner also alleges that the trial court's verdict was against the great weight of the evidence and thus he was denied a fair trial. This claim is not cognizable on habeas review and petitioner is not entitled to relief.

A federal habeas court does not have the power to grant habeas relief on the ground that the state conviction went against the great weight of the evidence. *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985; *Dell v. Straub*, 194 F.Supp.2d 629, 648 (E.D. Mich. 2002). A claim that a verdict went against the great weight of the evidence is not of a constitutional dimension, for habeas purposes, unless the record is so devoid of evidentiary support that a due process issue is raised. *Griggs v. State of Kansas*, 814 F.Supp. 60, 62 (D. Kan. 1993); *Crenshaw v. Renico*, 261 F.Supp.2d 826, 834 (E.D. Mich. 2003). The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Id*.; *United States ex. rel. Victor v. Yeager*, 330 F.Supp. 802, 806 (D. N.J. 1971).

As previously explained, the on-the-scene identification of petitioner by the victim was acceptable and not a violation of due process. This testimony provided sufficient evidence to

15

convict petitioner of robbery and carjacking. Because there was sufficient evidence to convict petitioner of these offenses, the fact that the verdict may have gone against the great weight of the evidence would not entitle him to habeas relief. However, the verdict does not go against the great weight of the evidence. The trial court found the victim's incriminating testimony very credible. She identified petitioner spontaneously and he matched the description she provided police earlier. Therefore, the Court should determine that petitioner is not entitled to habeas relief under this claim.

H.   *Ineffective Assistance of Counsel (Claim VI & VII)*

Finally, petitioner contends that his trial counsel was ineffective for failing to investigate and/or call a witness supporting petitioner's theory and that appellate counsel was also ineffective for failing to raise meritorious issues on direct appeal. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687. These two components are mixed questions of law and fact *See id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, …that course should be followed." *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at

689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. As the Sixth Circuit has explained, "[w]here ineffective assistance at sentencing is asserted, prejudice is established if the movant demonstrates that his sentence was increased by the deficient performance of his attorney." *Spencer v. Brooker*, 254 Fed. Appx. 520, 525 (6th Cir. 2007) (citing *Glover v. United States*, 531 U.S. 198, 200 (2001)).

Here, petitioner cannot show that trial counsel was ineffective for failing to call a potential witness. Absent any information from petitioner concerning this supposed witness, or if counsel knew of this witness, there was no reason to conduct any further investigation. "An attorney's failure to investigate 'cannot be charged as a claim of ineffective assistance of counsel when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself.'" *United States v. King*, 936 F.2d 477 (10th Cir. 1991) quoting *United States v. Miller*, 907 F.2d 994, 999 (10th Cir 1990). Lacking any information about this witness, petitioner cannot sufficiently show that he was prejudiced by trial counsel's failure to call or interview the witness.

Additionally, petitioner cannot show that appellate counsel was ineffective for failing to

17

raise meritorious claims on direct appeal. The Supreme Court has held that, "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 US 259, 288 (2000) citing *Jones v. Barnes*, 463 US 475 (1983). Generally, the presumption of effective assistance of counsel will be overcome when ignored issues are clearly stronger than the issues claimed by counsel. *Gray v. Greer*, 800 F.2d 644,646 (7th Cir. 1986). With respect to appellate counsel, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). Here, as explained in this Report, all of petitioner's claims are without merit. Thus, petitioner cannot show that appellate counsel was ineffective for failing to raise the claims on direct appeal.

I.   *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.   NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United*

*States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                        s/Paul J. Komives
                                        PAUL J. KOMIVES
Dated:7/30/09               UNITED STATES MAGISTRATE JUDGE

| |
|---|
| The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on July 30, 2009.<br><br>                          s/Eddrey Butts<br>                          Case Manager |